PROYOSTY, X
A liquidator having been appointed to the Lescale Schwab Lumber Company, Limited, by the stockholders of that company, and this liquidator having obtained an order for the sale of all the property of the concern and advertised the sale, a petition was filed by the defendants in the present suit, 12 in number, the creditors of the company, to have the appointment of the liquidator declared to be null, and to have a receiver appointed to take charge of the affairs of the company. As reasons why the receiver should be appointed, allegations of mismanagement and misapplication of funds and illegal preference were made against the stockholders of the company, among whom was Dr. X F. Lescale, the plaintiff in the present suit. Those allegations are now charged by plaintiff, Dr. Lescale, to have been false and libelous, and damages are claimed. An exception of no cause of action was sustained, and plaintiff prosecutes this appeal.
The grounds of the exception are that material allegations are privileged and non-actionable, and that therefore, in order to show a cause of action, plaintiff’s petition should have negatived the materiality of the allegations, and that it has not done so; that, on the contrary, plaintiff has made the petition containing the obnoxious allegations part of his own; and that it is patent on the face of the allegations that they were material to the issue.
There can be no doubt that the allegations in question were material to the issue. They were but the statement in decorous language of the facts upon which plaintiffs, defendants here, relied in support of their demand for the removal of the liquidator and the appointment of a receiver, and that demand, it was admitted in the oral argument, was sustained by the court. In the philosophical sense an untrue allegation cannot be material, but in the legal sense it can; since, for the purposes of the argument, it is assumed to-be true, the question is as to whether it would be material if true. In other words, by an allegation being privileged, nothing more is meant in legal parlance than that inquiry into its verity will not be permitted. The fact is that, in the nature of things, the question of privilege could not arise in connection with a true allegation. It can arise only in connection with one that is false. In the instant case the allegations against plaintiff, if true, would have been material, just as the like allegations against his co-shareholders and co-directors were found by the court to be material; nay, were made-the basis of the judgment of the court. A further illustration of an allegation false and yet material is where a fire insurance-company in defense to a suit on one of its policies falsely alleges that the fire was the-voluntary act of the policy holder. Such an allegation, no matter how false, is none the less material in the legal sense. If, then, it be true that material allegations are privileged, their verity not permitted to be inquired into, plaintiff’s petition, which not only does not, either in express terms or otherwise, negative the materiality of the allegations in question, but, on the contrary, shows them to have been material if true, and negatives only their verity, does not show a cause of action. To allege a thing which the law will not permit to be proved is practically to allege nothing at all. Therefore to allege the falsity of the allegations in question without at the same time alleging their immateriality was practically to allege nothing at all, if it be true that they were privileged.
The question in this ease must, therefore, be as to whether it is true that in this state material allegations are privileged.
At common law by preponderance of authority they are. The rule on the subject *298 is stated in the Am. & Eng. Ency. of L. vol. 18, p. 1024, as follows:
“It is a rule in England and in some jurisdictions in the United States that statements made by a party in the pleadings, affidavits, or other papers used in the course of the prosecution or defense of an action before a court of justice, are absolutely privileged, even though made maliciously and falsely, and cannot be made the basis of an action for libel. But the prevailing rule in the United States is that statements made in pleadings or writings used in the course of judicial proceedings before a competent tribunal, though they are such as if used elsewhere would import malice and be actionable in themselves, are not actionable if they are applicable and pertinent to the subject of inquiry, but that such privilege does not extend to matter having no materiality or pertinency to the question involved in the cause or at least to matter which the defendant could not reasonably have supposed to be relevant.”
The civil-law rule is that “every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” Pothier on Obligations, No. 116 et seq. Those are not the exact words of Pothier, but the language is derived from his text, and sums up his meaning. It is the language of Code Napoleon, art. 1182, and is reproduced from that Code into ours. Article 2315. Hence in France and in this state it is statutory law. Some commentators on the Code Napoleon, notably Laurent (volume 20, Nos. 412, 413), would enforce that article to the letter, regardless of the good or bad faith of the offending litigant, or of the existence vel non of probable cause; but the courts have tempered the rigor of the article. The jurisprudence on the subject is summed up by Fuzier-Herman, in notes 121 and 130 to articles 1182 and 1883, as follows:
“The bringing or defending of a suit is, as a general proposition, merely the exercise of a right. However, apart from the costs of suit which naturally fall upon the party cast, the recourse to judicial proceedings may furnish the ground for an action in damages. Everybody is agreed as to that; but everybody is not agreed as to what are the conditions upon which that action depends. Our own idea is that a mere negligence or imprudence of the litigant will support such an action, in the absence of any statute derogating from articles 1182 and 1183; while, on the other hand, jurisprudence requires that there should have been, in addition, bad faith, or a mistake so gross as to be the equivalent of (dol) intentional wrong.
“It is known that in the special matter that we are now examining jurisprudence has conceived a peculiar notion in regard to what constitutes a fault, namely, that there is fault only if there has been bad faith on the part of the defendant. The opinion is debatable. However, we are none the less bound to admit that according to the decisions of the court recourse to the courts can become a fault, such as may give rise to damage, only in so far as it has been an act either of malice or bad faith, or at any rate a mistake so gross as to be the equivalent of (dol) intentional wrong.” Citing cases 2 Mai, 1836 (S. 36. 1. 914, P. Chr. E>. P. 38, 1. 390); 14 Aout, 1882 (S. 83. 1. 145, P. 83. 1. 353, D. P. 83. 1. 255) ; 7. Dec., 1885 (S. 88. 1. 252, P. 88. 1. 611, D. P. 86. 1. 207); 6 Mars, 1889, Precite; 22 Avr. 1890 (S. 92 1. 52, P. 92. 1. 52, D. P. 90. 1. 465); 11 Juin, 1890 (S. 92. 1. 449, P. 92. 1. 449, D. P. 92. 1. 324) ; 14 Avr., 1891 (S. 94. 1. 351, P. 94. 1. 351, D. P. 91. 1. 355) ; 3 Juill., 1895 (S. 95. 1. 344, P. 95. 1. 344), Rennes, 5 Dec. 1882 (8. 83. 2. 92, P. 83. 1. 477), Dijon, 22 Fevr. 1893 (D. P. 94. 2. 354), Sic, Boncenne et Bourbeau, Theor. de la Proc. (2 Ed.) t. 2. P. 535; Chauveau et Carre, Lois de la Proc. et Supplem. quest. 544 quater; Baudry-Lacantinerie, t. 2. n. 1349; Larombiere, sur les art. 1382 et 1383, n. 53; Hue t. 8, n. 411. V. aussi Bruxelles, 25 Oct. 1843 (Pasier. B. 44. 2. 228); 26 Janv. 1863 (Pasier. B. 63. 2. 209) ; 19 Fevr. 1869 (Pasier. B. 69. 2. 231), Gand, 13 Aout, 1844 (Pasier. B. 44. 2. 248), Liege, 12 Mars, 1859 (Pasier. B. 60. 2. 239) ; 22 Mai, 1869 (Pasier. B. 71. 2. 90); 26 Juin, 1872 (Pasier. B. 72. 2316), Dutruc, Supplement aux Lois de la Proc. de Carre et Chauveau, t. 1. v. Dommagesinterest, n. 2 et s. V. supra, art. 326, n. 8.
How far our court has tempered the article in its application to offending litigants is the question we now come to.
It is familiar jurisprudence that an action lies for a civil suit instituted without probable cause, or even for a voluntary affidavit in a criminal case without probable cause. Hennen’s Digest, verbo “Malicious Prosecution.” In the ease of Rayne v. Taylor, 14 La. Ann. 406, where the suit for libel was based on allegations that had been contained in an answer, it does not seem to have occurred either to the court or the counsel in the case that the defendant could invoke the privileged character of the allegations.
*300 In the case of Wallis v. Railroad Co., 29 La. Ann. 66, where the allegations complained of had been contained in an answer, and had been relevant, the court, in disposing of the case, said:
“The doctrine which should govern the court in such controversies is simple and sound. Was there probable cause to justify the charge? Was the charge made under the honest and reasonable belief that it was true? If so, no damages can be recovered.”
In the case of Vinas v. Merchants’ Mutual Ins. Co., 33 La. Ann. 1267, the plaintiff had brought a suit on a policy of insurance, and the defendant, in its answer, had charged him with fraud, and he brought suit for libel. The court said:
“The charge of fraud made by the defendant at the time of the institution of the suit on the policy was pertinent to the issue, and could bo asserted with impunity, provided it were made in good faith, with probable cause, to be ascertained from the surrounding circumstances, and a state of facts honestly believed to be then in existence.”
In Kelly v. Lafitte, 28 La. Ann. 435, the petition was held to show a cause of action, although based on allegations that certainly had been material. The allegations had been made in an affidavit supporting a motion for a new trial. The plaintiff, Kelly, had testified in the case, and the motion for new trial was based on the allegation that his testimony had been false. The privilege was claimed, but was denied; the court citing article 2315. True Lafitte had been only the agent of the defeated party, and not himself party to the suit, and the court seems to lay some stress on that fact; but it would seem as if the materiality of the allegations ought to protect the agent acting for the principal, if it would protect the principal.
In Weil v. Israel, 42 La. Ann. 955, 8 South. 826, the suit for libel was based upon allegations contained in an answer. The same plaintiff, Weil, had sued the same defendant, Israel, on a quantum meruit for services as clerk, and the allegations complained of had been made for the purpose-of showing the little value of the services,, and therefore had been material. Though the case was sharply fought by very able-counsel, it does not seem to have occurred either to court or counsel that the allegations had been privileged because material. That question was not raised in the case. Plaintiff was given judgment.
In the case of Gardemal v. McWilliams, 43 La. Ann. 457, 9 South. 106, 26 Am. St. Rep. 195, the exception of no cause of action founded on the privileged character of the-allegations had been pleaded, and had been overruled by the lower court This appears, from the brief of counsel. But, although the exception seems to have been strenuously insisted on in this court, it was not considered, but the decision was based on. the merits and apparently on the insufficiency of the proof. From the decision as a whole it is not possible to be very certain what precisely is its doctrine. In one place the court says:
“If the occasion exists on which the privileged communication is made, and the matter is pertinent to the occasion, it supplies an absolute defense, and depends in no respect upon the bona fides of the defendant. The burden of proof is on the plaintiff. He must show the absence of the occasion; and, if the occasion existed, that the matter complained of was not pertinent to the occasion, and that the defendant acted with malice in fact, through hatred, ill will, with a malicious design to injure the plaintiff. Fisk v. Soniat, 33 La. Ann. 1400.”
In another place the court says:
“There was evidence introduced on the trial to prove the falsity of the severe charges in the petition. They may be unfounded and false in fact, and yet defendant may not be responsible in damages for the language used in the petition. In privileged communications the party is protected from the infliction of damages, unless the occasion was used as a means of inflicting- a willful and malicious injury upon the plaintiff.
“The occasion on which a privileged communication is made rebuts the inference of malice arising from a statement prejudicial to the character of the plaintiff, and it devolves upon him to prove malice in fact; that the defendant was actuated by motives of personal spite and *302 ill will, independent of the occasion on which the communication was made.”
And elsewhere the court says:
“What is alleged in a judicial proceeding in the effort to enforce a private right is not to be judged by technical rules. The party attempting to enforce his right may be mistaken in his remedy. He may use language which could have been avoided. But after all, the question is one of intent.”
Thus, while in one place the court lays down the rule that the burden is on plaintiff to show that the allegations were irrelevant, in another place the court says that the occasion is a protection “unless it was used as a means of inflicting a willful and malicious injury upon plaintiff,” implying that in the latter case it is not a protection. Still in another place the court used the expression that the privilege extends to all those who “in the honest pursuit of private right are compelled to take part in the administration of justice,” implying that unless the pursuit is honest the occasion is not privileged.
The expressions here noted are referred to in Randall v. Hamilton, 45 La. Ann. 1190, 14 South. 73, 22 L. R. A. 649, as furnishing the key to the true doctrine of the decision; and Justice McEnery, who was the organ of the court in the Gardemal Case, took part in the Hamilton Case. The court there said:
“Nothing in the Gardemal Case, which was one tried on its merits, and which turned upon the burden of proof, is out of line with the views herein expressed. In that case this court, speaking of privileged communications, said: ‘In privileged communications the party is protected from the infliction of damages unless the occasion was used as a means of inflicting a willful and malicious injury upon the plaintiff,’ and, referring to protection resulting from judicial proceedings, declared it ‘extended to those who were in the honest pursuit of private right.’ It was never once intimated that the courts of our state were places from which, as from places of secure refuge, they could with impunity perpetrate wrong.”
In the Randall v. Hamilton Case the allegations, though material, were held not to have been privileged; but that was because the suit itself in which they had been made had been a mere sham suit, one not founded on probable cause. And the same thing may be said of the kindred case of Wimbish against the same Hamilton, based on the same facts. 47 La. Ann. 247, 16 South. 856.
In Grant v. Haynes, 105 La. 304, 29 South. 708, 54 L. R. A. 930, where the privilege was invoked, the court disposed of the case on the theory that it was not true that the allegations complained of had been material.
In the latter two cases a strong implication arises that the court entertained the view that material allegations in a real suit, a suit founded on probable cause, are privileged; for the court went extensively into the question of the materiality of the allegations, and held that they were not privileged because they had not been material.
The learned counsel for defendants cite the ease of Burke v. Ryan, 36 La. Ann. 951; but that case involved the privilege of a witness, an entirely different matter. Obvious considerations lead to the protection of a witness, especially a nonvolunteer witness, that have no application in the case of a mere litigant prosecuting, or defending, his private right.
From the foregoing review the admission must be made that our jurisprudence is in an unsatisfactory state on this question. But the general result may fairly be said to be that an allegation is not privileged unless founded on probable cause. Dealing with the question as if it were res nova, we have, in the first place, the statute: “Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” And' we have, in the next place, the jurisprudence of the country from whose laws that statute was borrowed, interpreting it as having application to every case where there has been either intentional fault or gross unintentional fault.
The litigant who brings a suit without probable cause is held responsible in damages; and in France the responsibility is extended *304 in precisely the same degree to the litigant who defends a suit without probable cause. Why should there be responsibility for bringing a suit without probable cause, and yet none for making without probable cause an allegation in the suit?
Will the law hold a litigant answerable for the mere vexation or trouble he may cause his adversary by instituting a suit against him without probable cause, and yet privilege him to destroy utterly the reputation of the same adversary without probable cause if only he does it by means of relevant allegations in a suit?
We imagine not, and that, as much for his allegations as for the suit itself, the litigant ought to show probable cause, or else be answerable for the consequences. And, indeed, what greater degree of protection can a litigant possibly need? Can he complain if he is debarred from making defamatory statements for the making of which he could not show probable cause? Can he with any show of reason claim- the right to make defamatory statements which he has no reason to believe are true?
In the course of the oral argument a decision of the United States Court of Appeal for this dictrict was referred to as having held that a fire insurance company was not answerable in damages for having falsely, maliciously, and without probable cause, in its answer to a suit on one of its policies, charged the plaintiff with having himself set fire to the premises for the loss of- which he made the claim on the policy. The case is not cited in the brief, and we have not time to look it up; but to our mind such a doctrine, however sound it may be, in so far as founded upon the common law, appears to be simply intolerable. It licenses every fire insurance company to besmirch the reputation of any one of its policy holders who may venture to bring suit on one of its policies. Under the operation of such a doctrine the policy holder might be the most honorable man in the community, and yet the insurance company boldly and openly threaten him with defamation if he dare bring suit. By such a doctrine the insurance company is armed with two defenses—one, to be availed of before the court, founded on the law and the facts, and addressing itself to tlie merits of the case; the other to be availed of before the tribunal of public opinion, addressing itself to the good name of the policy holder, and founded on nothing at all. If you- dare bring suit against me, I will charge you with having set fire to your own premises, and, though your claim may not be defeated thereby, your reputation, at any rate, shall be wounded.
On the assumption that material allegations are not privileged, the petition of plaintiff unquestionably shows a cause of action. It alleges as follows:
“Tour petitioner avers that m the aforesaid petitions and pleadings said allegations were made without warrant in law or probable cause, well knowing them to be false, and were made by the said parties to injure your petitioner, and with malice the aforesaid parties did allege and charge that your petitioner had 70 shares of stock of the Lescale-Sehwab Lumber Company, Limited, upon which he owed at least 80 per cent, of the value thereof, and they further charge that your petitioner claimed that the aforesaid lumber company was indebted to him in a large sum of money, and that your petitioner, together with others, -sold property belonging to the said lumber company, amounting in value to the sum of seventy-five hundred dollars ($7,500), a part of which amount they charge and allege your petitioner accepted in part payment of his alleged claim against the aforesaid lumber company, all of which is absolutely false and untrue, libelous, and illegal.
“That they also charged that your petitioner conspired to and did increase the pay rolls for labor for operating the plant of the said lumber company and to leave the same unpaid, and conspired to dispose of all the new lumber belonging to said company, and conspired to, and did in certain liquidated pleadings, undervalue and caused to be underappraised the property belonging to said lumber company for the purpose, and with the intent, of causing all the property of the company to be sold at a sacrifice sale, at a trifling figure, with the intent of buying said property in themselves and wiping out the creditors of said defendant corporation, all of which allegations are willfully and maliciously *306 false and untrue, made deliberately and designedly to .injure your petitioner -without probable cause, and that the said above-named parties, in making the said averments, knew them to be untrue when they made them.
“That the-said parties had charged your petitioner notified intending purchasers not to purchase the mill, which is untrue, false, and malicious, and that petitioner had declared his intention of notifying intending purchasers not to buy, under penalty to be compelled to remove their property from the present location, all of which is false and untrue.
“Tour petitioner further avers that by reference to the said petition and pleadings annexed hereto and made part hereof it will be seen that the aforesaid parties had charged your petitioner with appropriating funds of the company illegally, with practicing fraud upon its credits, with violating the law, with conspiring to wreck the company, all of which allegations were deliberately and purposely made by the said parties without any foundation in fact or in law, as they well knew, for the purpose and with the intention of injuring, harassing, humiliating, and mortifying your petitioner, which they have done, much to his detriment and injury.
“That there existed absolutely no cause or reason for such allegations to be made, as they are all false and untrue, and that the said parties well knew them to be such.”
Since the case is being considered on exception of no cause of action, these averments must be taken for true; and, as a consequence, the situation of the ease is that whatever foundation there may have been for. the obnoxious allegations in so far as plaintiff’s fellow incorporators were concerned there was none whatever, absolutely none, in so far as plaintiff was concerned, and that the petitioners, defendants here, knew this, but made the defamatory allegations notwithstanding, actuated thereto by malice towards plaintiff and a desire to injure him. In other words, that plaintiff as a shareholder was not indebted to the company, and took no part in the acts of mismanagement complained of, and that the defendants here knew this when they made the defamatory allegations.
That upon these facts a cause of action arises in favor of plaintiff ought to go without saying. There was no necessity for defendants to refer to plaintiff. It was wholly gratuitous. They could have maintained their suit just as well without it; but through malice, with design to injure him, they brought him in. They went out of their way to assail him in the manner complained of. So that, however well founded their suit may otherwise have been, it was quoad him purely gratuitous and vexatious—a sham suit instituted without probable cause, a mere cover from under which to perpetrate an unwarrantable and uncalled for assault.
In behalf of the Standard Oil Company, one of the defendants, a plea of prematurity was filed, predicated on the fact that the plaintiff had failed to allege that the suit in which the allegations complained of were made had terminated. The rule obtaining in actions for malicious prosecution was invoked, according to which a cause of action cannot accrue before the termination of the malicious prosecution. The lower court overruled the plea, and properly.
Conceding such a rule to obtain in cases like the present one, whére a libel is charged to have been contained in judicial allegations, such rule could not be applied in the instant case, where the plaintiff was not a party to the suit wherein the allegations complained of were made. Not being a party to the suit, he would have no right to insist upon its being tried, so that, for all he could do, its trial might be postponed indefinitely. If it came to be tried, he would have no right to offer evidence to establish the falsity of the libelous allegations. The result of the suit, or any' of the proceedings in it, could not be binding on him. Indeed, it stands to reason that one’s right of action cannot be dependent upon what shall be done in a suit to which one is not a party.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the exception of no cause of action be overruled, and that the case be remanded for trial according to law; defendant to pay the costs of appeal; and the *308 costs of the lower court to abide the result of the suit.
BREAUX, C. J., dissents.